UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Angelica Fernandez,

    Plaintiff

v.

State Farm Mutual Automobile Insurance Company,

    Defendant

Case No.: 2:17-cv-00731-JAD-VCF

**Order re: Motions for Partial Summary Judgment**

[ECF Nos. 18, 19, 20, 21]

This is an insurance-coverage dispute arising out of State Farm Mutual Automobile Insurance Company's failure to pay underinsured-motorist (UIM) benefits to its insured, Plaintiff Angelica Fernandez, because her policy contains a provision that reduces her UIM benefits by amounts that "could have been paid" by workers' compensation insurance. Fernandez sues State Farm for a declaration that this reduction clause violates Nevada law, and for contract breach, bad faith, and violations of the Nevada Administrative Code (NAC). Over four separate motions, Fernandez and State Farm cross move for summary judgment on all but the breach-of-contract claim. I grant summary judgment in favor of Fernandez on her declaratory-relief claim because the "could have been paid" clause violates Nevada public policy and is thus unenforceable. State Farm is entitled to summary judgment on Fernandez's NAC claims because exclusive jurisdiction over those claims is vested in the Insurance Commissioner, and on Fernandez's punitive-damages prayer because the record does not support exemplary relief. I then send the parties to a mandatory settlement conference on their remaining contract and bad-faith claims.

**Background**

Angelica Fernandez worked for Nevada Coaches, LLC, a transportation company that offers airport-shuttle, sight-seeing, and group-transportation services. During Fernandez's shift

1

one day in March 2014, Mario Johnson crashed his vehicle into hers,[1] causing her to sustain $27,449.56 in medical expenses.[2] AAA Insurance insured the car that Johnson was driving and paid Fernandez Johnson's bodily injury policy limit of $25,000.[3] Fernandez then filed a claim under her own State Farm UIM policy to cover the difference.[4] State Farm denied the claim after concluding that "worker compensation benefits and the tortfeasor's liability limits will combine to sufficiently reimburse [Fernandez] for her injuries."[5] It relies on the clause in Fernandez's policy that reduces State Farm's liability by any "amounts that: (a) have already been paid; (b) could have been paid; or (c) could be paid" to the insured "under workers' compensation law, disability benefits law, or similar law."[6] Fernandez never filed a workers' compensation claim, so she has not received and will not receive such benefits. State Farm assumes that the workers' compensation system would have paid Fernandez her entire $27,449.56 in medical expenses had she filed a claim.[7]

Fernandez sues State Farm for (1) a declaration that the reduction clause is unenforceable; (2) breach of contract;[8] (3) breach of the implied covenant of good faith and fair

---

[1] ECF No. 21-3.

[2] ECF No. 21-4 at 4.

[3] ECF No. 21-9. Before this case proceeds to trial, the court will require State Farm to demonstrate how federal subject-matter jurisdiction exists for this state-law coverage dispute with a $15,000 policy limit and unreimbursed medical expenses of just $2,449.56. *See Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) (quoting 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper.").

[4] ECF No. 21-11.

[5] ECF No. 21-12. State Farm posits that it neither accepted nor denied the claim, but merely told Fernandez that her "claim did not exceed the applicable offsets available from the workmen's compensation and the tortfeasor's policy" and that she could resubmit her claim if that wasn't the case. ECF No. 21 at 7 (citing SF000178, which is nowhere to be found in the record). I construe State Farm's response to Fernandez as a de facto denial of her claim for purposes of this motion.

[6] ECF No. 21-13 at 15.

[7] ECF No. 24 at 3.

[8] Fernandez's second claim, entitled "underinsured motorist benefits," is really just a claim for breach of that provision in her insurance contract. It is duplicative of her broader breach of

dealing; and (4) violations of various provisions of the Nevada Administrative Code. She prays for declaratory relief and to recover her $15,000 UIM policy limit, punitive damages, attorneys' fees, and costs.[9]

Fernandez has filed three motions for partial summary judgment. In the first, she asks for summary judgment in her favor on her declaratory-relief claim because State Farm cannot prove the amount of workers' compensation benefits that she "could have been paid."[10] In the second, she asks the court to enter judgment in her favor on two of her NAC violation theories.[11] In the third, Fernandez argues that the "could have been paid" reduction clause in the workers' compensation offset is unenforceable under Nevada law because it violates public policy.[12] State Farm countermoves for summary judgment on Fernandez's declaratory-relief claim, bad faith claim, NAC claims, and punitive-damages prayer.[13] Her breach-of-contract claims escape scrutiny.

## Discussion

### A. Summary-judgment standards

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[14] The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[15] If the moving party satisfies its

---

contract claim in her third cause of action. *See* ECF No. 4 at 13. At trial, these claims will be construed as a single breach-of-contract claim.

[9] *Id.* at 18.

[10] ECF No. 18.

[11] ECF No. 19.

[12] ECF No. 20.

[13] ECF No. 21.

[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[15] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue for trial.[16]

Who bears the burden of proof on the factual issue in question is important. When the party moving for summary judgment would bear the burden of proof at trial (typically the plaintiff), "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[17] Once the moving party establishes the absence of a genuine issue of fact on each issue material to its case, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense."[18] When instead the opposing party would have the burden of proof on a dispositive issue at trial, the moving party (typically the defendant) doesn't have to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual issue.[19] The movant need only defeat one element of the claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[20] "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of"—and against—"both motions before ruling on each of them."[21] It is with these principles in mind that I consider the parties' motions for partial summary judgment.

---

[16] FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 819 (9th Cir. 1995).

[17] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir.1992) (citation and quotations omitted)).

[18] *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.1991) (citation omitted).

[19] *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Celotex*, 477 U.S. at 323–24.

[20] *Celotex*, 477 U.S. at 322.

[21] *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001)).

### B. Fernandez is entitled to summary judgment on her declaratory-relief claim because the reduction clause is unenforceable as against Nevada public policy.

The basis for State Farm's coverage denial—and the crux of Fernandez's claims—is State Farm's reduction clause. In her declaratory-relief claim, Fernandez seeks a declaration that this clause is unenforceable under Nevada law, and both parties now move for summary judgment on that purely legal issue. Fernandez explains that Nevada law allows an insurer to reduce benefits only by amounts actually paid, to avoid double recovery while still ensuring that "the insured is made whole."[22] The "could have been paid" reduction, she contends, gives the insurer the benefit of payments that will never be made, fails to foster any state policy, and leaves the insured less than whole.[23] State Farm argues that the Nevada Supreme Court "upheld a similar Limit of Liability exclusion" and already rejected Fernandez's public-policy argument in *Phelps v. State Farm*, and so should I.[24]

State Farm materially overstates the *Phelps* decision. It is true that the Nevada Supreme Court considered a version of State Farm's reduction clause in *Phelps* and found that it did not violate public policy.[25] But that version did not contain the "could have been paid" language; it only provided an offset for "any amount paid or payable to the insured."[26] In evaluating that clause, the Court stressed the state's twin goals of preventing double recovery while still making the insured whole, explaining, "It is well settled in this state that offset provisions in a policy [that] reduce the insurance benefits by the amount the insured receives from other sources are valid. Additionally, 'the goal of [UIM] coverage is to make the claimant whole. The offset clause prevents a double recovery by the claimant.'"[27]

---

[22] ECF No. 20 at 6.

[23] *Id*. at 6–7.

[24] ECF No. 21 at 10–11.

[25] *Phelps v. State Farm*, 917 P.2d 944, 947–48 (Nev. 1996).

[26] *Id.* at 946.

[27] *Id.* at 948 (quoting *Truck Ins. Exch. v. SIIS*, 823 P.2d 279, 281 (Nev. 1991)). The *Phelps* court found "that *Truck Ins. Exchange* [wa]s directly on point and permit[ted] State Farm to reduce the amount it owe[d] Phelps by the amount that Phelps collected from other sources, if other conditions [were] satisfied.").

5

Unlike *Fernandez*, however, Phelps had made a workers' compensation claim, and he received nearly $100,000 for medical bills and past and future benefits.[28] Because allowing State Farm an offset for the workers' compensation benefits that Phelps collected did not frustrate those goals, the Nevada Supreme Court upheld the clause, reasoning:

> in the instant case there is no possibility that enforcement of the offset provisions will deny Phelps a full recovery for his injuries because Phelps has already been made whole through a combination of payments. . . . Therefore, State Farm had authority to take these offsets, and as a result Phelps was denied a double recovery for his injuries while still being made whole.[29]

That the key to a reduction clause's enforceability in Nevada is the actual receipt of offsetting benefits is evident not just from the language of *Phelps*, but from the decisions that it relies on. The *Phelps* court relied on its five-years-earlier conclusion in *Continental Casualty v. Riveras*[30] that the same reduction clause did not violate public policy and that Continental's UIM benefits could be offset by the $41,678.58 that the insured employee received from the workers' compensation system.[31] It also referenced *Maxwell v. Allstate Insurance Company*,[32] which deemed a subrogation clause in an automobile policy against public policy and void because, "[i]f subrogation were permitted" in the way the policy's clause operated, "the injured person may recover nothing for medical expenses."[33] So there's an overriding theme in Nevada's UIM-coverage-offset jurisprudence: reduction clauses are enforceable to prevent a windfall or double recovery, and only if the insured will still be made whole by another means.

This theme is consistent with the national trend. Virtually all of the cases in other states in which courts have upheld reduction clauses as consistent with public policy describe the

---

[28] *Id.*

[29] *Id.*

[30] *Continental Casualty v. Riveras*, 814 P.2d 1015, 1018 (Nev. 1991).

[31] *Phelps*, 917 P.2d at 948.

[32] *Maxwell v. Allstate Ins. Co.*, 728 P.2d 812 (Nev. 1986).

[33] *Phelps*, 917 P.2d at 947–48; *see also Maxwell*, 728 P.2d at 815.

subject workers' compensation benefits as payments, or as amounts or benefits awarded, recovered, compensated, paid, determined, reimbursed, or received[34]—all suggesting that the insured must be made whole for the provision to be enforced. I have found just one exception. In *Rydingsword v. Liberty Mutual Insurance Company*,[35] the Supreme Court of Connecticut upheld an arbitration award that reduced a UIM claim for prospective workers' compensation recovery. The court reasoned, "If the claimant deprives the underinsured motorist carrier of the benefit of a finding by the workers' compensation commissioner and the value of the unrealized claim is determined in the arbitration forum on the basis of substantial evidence, the claimant cannot be heard to complain."[36] But *Rydingsword* is inconsistent with Nevada's public policy favoring interpretations of UIM policies in a way that makes the insured whole,[37] and I cannot conclude that the Nevada Supreme Court would follow it here in light of *Maxwell* and its progeny.

Based on the robust body of UIM-coverage and workers' compensation case law from the Nevada Supreme Court, which stresses the enforcement of reduction clauses only when the insured is still made whole, I conclude that the "could have been paid" clause in Ferndandez's reduction clause violates Nevada public policy. To enforce this clause would allow the insured's UIM recovery to be reduced by theoretical, not actual, benefits, leaving the insured less than whole. Plus, this clause does nothing to prevent double recovery; it just gives the insurer a windfall. So, I find that this clause is invalid and unenforceable as against public policy. I thus grant summary judgment in favor of Fernandez and against State Farm on Fernandez's declaratory-relief claim.

---

[34] *See Uninsured and Underinsured Motorist Coverage: Validity, Construction, and Effect of Policy Provision Purporting to Reduce Coverage by Amount Paid or Payable Under Workers' Compensation Law*, 31 A.L.R. 5th 116 (2018) (collecting cases).

[35] *Rydingsword v. Liberty Mut. Ins. Co.*, 615 A.2d 1032 (Conn. 1992).

[36] *Rydingsword*, 615 A.2d at 1039.

[37] *See Phelps*, 917 P.2d at 948 (quoting *Truck Ins. Exch. v. SIIS*, 823 P.2d 279, 281 (Nev. 1991) ("The goal of [UIM] coverage is to make the claimant whole.")).

## C. Genuine issues of material fact preclude summary judgment on State Farm's bad-faith claim.

State Farm also moves for summary judgment on Fernandez's claim that it breached the implied covenant of good faith and fair dealing in her policy when it denied her UIM-coverage claim.[38] Nevada law recognizes the existence of an implied covenant of good faith and fair dealing in every contract, and a party breaches that covenant when it acts in bad faith.[39] "Bad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct."[40] It is not enough to show that, in hindsight, an insurer acted unreasonably; the plaintiff must show that the insurer knew or recklessly disregarded that it was acting unreasonably.[41] An insurer does not act in bad faith merely because it disagrees with the claimant's estimation of her injuries or delays paying out benefits until it receives relevant documents or expert opinions.[42] Generally, "a bad-faith claim is subject to summary judgment if the defendant demonstrates that there was a genuine dispute as to coverage, because if the insurer had a reasonable basis to deny coverage," the insurer is unlikely to know it was acting unreasonably.[43]

State Farm contends that its dispute with Fernandez is just a garden-variety disagreement over the value of her claim that falls far short of bad faith.[44] But whether State Farm had a reasonable basis to deny her claim remains subject to genuine dispute. State Farm had no

---

[38] ECF No. 21 at 12.

[39] *A.C. Shaw Construction v. Washoe County*, 784 P.2d 9, 9 (Nev. 1989); *Ainsworth v. Combined Ins.*, 763 P.2d 673, 676 (Nev. 1988).

[40] *Guar. Nat. Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996).

[41] *Id.*; *see also Powers v. United Servs. Auto. Ass'n*, 962 P.2d 596, 604 (Nev. 1998).

[42] *See Amini v. CSAA Gen. Ins. Co.*, 2016 WL 6573949, at *4 (D. Nev. Nov. 4, 2016) (granting summary judgment to insurer on bad-faith claim even though it delayed in making settlement offers and relied only on expert opinions to reject the plaintiff's offer); *but see Powers*, 962 P.2d at 604 (finding a triable issue as to bad faith because there was "abundant evidence" that the insurer's "investigation was improper, incomplete, poorly done, [and] in violation of [its] own procedures").

[43] *Amini*, 2016 WL 6573949, at *4 (internal quotations omitted).

[44] ECF No. 21 at 12.

evidence to support its position that Fernandez would have recovered all of her medical expenses from workers' compensation had she filed a claim. Whether this assumption was reasonable and made in good faith will need to be decided by the jury. I thus deny State Farm's request for summary judgment on Fernandez's bad-faith claim.

D. **State Farm is entitled to summary judgment on Fernandez's claims for violations of the Nevada Administrative Code because those claims fall under the exclusive jurisdiction of the Nevada Insurance Commissioner.**

State Farm next moves for summary judgment on Fernandez's fifth, sixth, and seventh causes of action, which all assert claims for violations of various provisions of the Nevada Administrative Code.[45] State Farm points out that the Nevada Division of Insurance has exclusive original jurisdiction when "a party seeks to ensure compliance with the insurance code,"[46] and that's what Fernandez is trying to do here. Fernandez responds by insisting that she actually sues under Nevada Revised Statute § 686A.310, which provides for a private right of action, and not the NAC.[47]

But Fernandez's complaint lacks an NRS 686A.310 claim even under a liberal reading. Her claims are entitled "FIFTH CAUSE OF ACTION (Unfair Claims Practices – NAC 686A.675)," "SIXTH CAUSE OF ACTION (Unfair Claims Practices – NAC 686A.665)"; and "SEVENTH CAUSE OF ACTION (Unfair Claims Practices – NAC 686A.670)."[48] In these claims, she explains that these administrative-code provisions enforce various provisions of the Nevada Revised Statutes, including NRS 686A.310. So instead of pleading a claim for unfair claim practices under NRS 686A.310—as is the widespread and common practice in Nevada because NRS 686A.310 grants a private right of action to redress the unfair claims practices that

---

[45] *See* ECF No. 4 at 14–16 (asserting unfair-practices claims under NAC 686A.675, NAC 686A.665, and NAC 686A.670).

[46] ECF No. 21 at 15–16 (quoting *Allstate Ins. Co. v. Thorpe*, 170 P.3d 989, 994 (Nev. 2007)).

[47] ECF No. 23 at 7 & n.4.

[48] ECF No. 4 at 14–16.

9

it describes[49]—she pleads claims for violations of three provisions of the Nevada Administrative Code.

To save these claims from summary judgment, Fernandez now suggests that with her offhand references to NRS 686A.310 in these NAC violation claims, she sufficiently pled claims for violations of NRS 686A.310. But if Fernandez wanted to plead an unfair-practices claim under NRS 686A.310, she could have easily done so. As pled, hers are claims for violations of the Nevada Administrative Code, which this court lacks jurisdiction to enforce.[50] Because the Insurance Commissioner has exclusive authority to enforce the insurance code, I find that State Farm is entitled to summary judgment on Fernandez's fifth, sixth, and seventh causes of action, and I deny as moot Fernandez's motion for summary judgment in her favor on these same claims.[51]

**E.    The record is devoid of evidence to support Fernandez's punitive-damages prayer.**

Finally, State Farm moves for summary judgment on Fernandez's ability to recover punitive damages.[52] "Punitive damages provide a means by which the community . . . can express community outrage or distaste for the misconduct of an oppressive, fraudulent or malicious defendant and by which others may be deterred and warned that such conduct will not be tolerated."[53] To recover them, a plaintiff must prove "by clear and convincing evidence that the defendant is 'guilty of oppression, fraud or malice, express or implied.'"[54] "Oppression means despicable conduct that subjects a person to cruel and unjust hardship with conscious

---

[49] Nev. Rev. Stat. § 686A.310(2) ("In addition to any rights or remedies available to the Commissioner, an insurer is liable to its insured for any damages sustained by the insured as a result of the commission of any act set forth in subsection 1 as an unfair practice.").

[50] *See, e.g., Allstate Ins. Co. v. Thorpe*, 170 P.3d 989, 994 (Nev. 2007); Nev. Rev. Stat. § 679B.120(3) (giving the Nevada Insurance Commissioner exclusive authority to enforce the provisions of the Nevada Insurance Code).

[51] ECF No. 19.

[52] ECF No. 21 at 17.

[53] *Bongiovi v. Sullivan*, 138 P.3d 433, 450 (Nev. 2006) (internal quotations and citations omitted).

[54] *Id.* at 450–51 (quoting Nev. Rev. Stat. § 42.005(1)).

disregard of the rights of the person."[55]  "Fraud means an intentional misrepresentation, deception or concealment of a material fact known to the person with the intent to deprive another person of his rights or property or to otherwise injure another person."[56]  "[E]xpress malice is conduct [that] is intended to injure a person; implied malice is despicable conduct which is engaged in with a conscious disregard of the rights . . . of others."[57]

State Farm contends that, on this record, Fernandez cannot show by clear and convincing evidence that it was oppressive, fraudulent, or malicious in denying her UIM claim.  Fernandez responds with a list of six facts and theories that she claims prove State Farm's oppression, fraud, or malice: (1) State Farm knew she was under-compensated, so her UIM claim was a covered loss; (2) State Farm had no basis to assume that the value of her hypothetical workers' compensation benefits would be equal to her total medical expenses; (3) State Farm knew under *Continental Casualty v. Riveras* that it must calculate and deduct from the workers' compensation offset it was claiming the value of the subrogation interest that Fernandez's employer's carrier would have against the proceeds of her settlement, but it failed to do so and blamed her for not providing it; (4) State Farm had no evidence that Fernandez's employer was even complying with the workers' compensation laws; (5) State Farm knew that she was entitled to an explanation of the manner by which it valued her claim and the work comp offset but instead forced this lawsuit; and (6) State Farm's conduct violated its statutory obligation to timely investigate, accept, or deny her claim.[58]  Most of these points are more accurately characterized as theories than facts.  But even if all of this information could be proven, it falls short of meeting the high threshold needed to prove oppression, fraud, or malice on State Farm's part.  So, I grant summary judgment for State Farm on Fernandez's request for punitive damages.

---

[55] NEV. REV. STAT. § 42.001(4).

[56] NEV. REV. STAT. § 42.001(2).

[57] *Clark v. Lubritz*, 944 P.2d 861, 867 (Nev. 1997) (quoting NEV. REV. STAT. § 42.001(3)) (internal quotations omitted).

[58] ECF No. 23 at 15–16.

11

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Fernandez's motion for partial summary judgment **[ECF No. 20] is GRANTED**; her motion for partial summary judgment **[ECF No. 18] is DENIED as moot**; her motion for partial summary judgment **[ECF No. 19] is DENIED**, and State Farm's motion for partial summary judgment **[ECF No. 21] is GRANTED in part and DENIED in part.** I grant summary judgment in favor of Fernandez on her first cause of action for declaratory relief, and for State Farm on Fernandez's fifth, sixth, and seventh claims for violations of the Nevada Administrative Code, and on her prayer for punitive damages. This case proceeds to trial only on Fernandez's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

IT IS FURTHER ORDERED that **this case is REFERRED to a magistrate judge for a MANDATORY SETTLEMENT CONFERENCE**. The parties' obligation to file their joint pretrial order is STAYED until 10 days after that settlement conference.

Dated: September 4, 2018

_____
U.S. District Judge Jennifer A. Dorsey